IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HESHAM ISMAIL,<br><br>     *Plaintiff,*<br><br> v.<br><br>TIMOTHY KOLMAN, ESQ., and KOLMAN LAW, P.C.,<br><br>     *Defendants.* | CIVIL ACTION<br>NO. 24-5610 |

**Pappert, J.**                                 **December 29, 2025**

**MEMORANDUM**

  Hesham Ismail sued Timothy Kolman and Kolman Law, P.C., alleging breach of contract and fraud. Kolman moves to dismiss the Amended Complaint based on the statutes of limitations and failure to state claims upon which relief can be granted. After reviewing the parties' submissions and holding a hearing which included Mr. Ismail, the Court grants the motion because Ismail's claims are time-barred.

I

  On July 15, 2015, Interstate Resources fired Hesham Ismail, purportedly for his religious beliefs. (Am. Compl. ¶¶ 7–8, Dkt. No. 13.) After the EEOC issued Ismail his right-to-sue letter on April 17, 2018, (*Id.* ¶ 10–12), Ismail met with Timothy Kolman, an attorney at Kolman Law, to represent him in a discrimination suit against Interstate, (*Id.* ¶¶ 11–13.) The two entered into a contract for legal services on May 29, 2018, (*Id.* ¶ 14), which stated:

> Any recovery or settlement received in this matter will be distributed sixty percent (60%) to you and forty percent (40%) to the Firm. The percentage for the Firm will be distributed before taxes, if any, are taken out from any settlement or recovery.

1

*Ismail v. DS Smith Holdings, Inc.* (*Ismail I*), No. 18-2881, 2019 WL 7041895, at *2 (E.D. Pa. June 19, 2019); *see also* (Am. Compl. ¶ 14 ("Fee Agreement attached hereto as 'Exhibit A.'")). The agreement explained that costs would "come off of the 'top' of any settlement" and provided examples as to how any potential settlement would be apportioned between Ismail and Kolman. *Ismail I*, 2019 WL 7041895, at *2.

Ismail through Kolman and Kolman Law sued Interstate on July 10, 2018. (Am. Compl. ¶ 17.) Magistrate Judge Perkin conducted a settlement conference on April 3, 2019, (*Id.* ¶ 19), during which Ismail agreed to settle the lawsuit for $50,000 inclusive of costs and attorney's fees, *see* (*Id.* ¶¶ 19–21). Judge Perkin placed the terms of the settlement on the record, at which time he had the following colloquy with Ismail:

> THE COURT: All right. Have you had adequate time to discuss this matter with your counsel, Mr. Kolman?
>
> MR. ISMAIL: Yes.
>
> THE COURT: And you believe that you've been well represented by him in this matter?
>
> MR. ISMAIL: Yes.
>
> THE COURT: I agree with that as well. Do you understand also that the-- once the $50,000 is paid, that includes all costs and counsel fees, you would not be entitled to go and make a separate application to the Court for reimbursement of those expenses?
>
> MR. ISMAIL: Yes.
>
> THE COURT: All right. Do you have any questions concerning the terms of settlement?
>
> MR. ISMAIL: No.
>
> THE COURT: Do you agree to these terms of settlement?
>
> MR. ISMAIL: Yes.

*Ismail I*, Apr. 3, 2019 Tr. at 6:14–7:6, Dkt. No. 35 (citation modified).

But later that day, after speaking with some lawyer friends, Ismail had a change of heart and told Kolman he wanted out of the settlement agreement. *See id.*, Notice of Obj. at 4, Dkt. No. 40. Ismail emailed Kolman that night: "The legal fees being 40% is a huge difference. Had I known this, I would have wanted to continue to go to court because I would make 40% more." *Id.*; *see also* (Am. Compl. ¶¶ 23, 36–37 (similar)). A month later, Kolman and Interstate's counsel wrote to Judge Perkin that Ismail "has refused to finalize the settlement" because he alleged "he was not informed that had his claim been successfully litigated, he would be entitled to legal fees." *Ismail I*, May 21, 2019 Letter from Marjorie Kaye & Timothy Kolman to Judge Perkin, Dkt. No. 30.

Judge Perkin held another hearing on June 3, 2019 where Ismail objected to the settlement and Kolman moved to enforce the agreement. (Am. Compl. ¶ 26.) A few days later, Judge Perkin issued a Report and Recommendation to enforce the settlement agreement. (*Id.* ¶ 27); *Ismail I*, 2019 WL 7041895 (E.D. Pa. June 19, 2019). Kolman withdrew as Ismail's attorney and refused to object to the Report and Recommendation, (Am. Compl. ¶ 29), so Ismail objected *pro se* on July 3, (*Id.* ¶ 28); *Ismail I*, Notice of Obj., Dkt. No. 40.

Judge Schmehl held an evidentiary hearing on November 22, 2019, (Am. Compl. ¶ 30); *Ismail I*, Dkt. No. 47, and on December 19 overruled Ismail's objections and adopted the Report and Recommendation, *see* (Am. Compl. ¶ 30); *Ismail I*, 2019 WL 7020114 (E.D. Pa. Dec. 20, 2019), *adopting R. & R.*, 2019 WL 7041895 (E.D. Pa. June 19, 2019). Judge Schmehl issued an amended Order on January 6, 2020 once more enforcing the agreement, *Ismail I*, 2020 WL 60044 (E.D. Pa. Jan. 6, 2020), and denied

Ismail's request to proceed with the case on January 27, 2020, *id.*, Jan. 27, 2020 Order, Dkt. No. 52 (E.D. Pa. Jan. 27, 2020). In his January 27 Order, Judge Schmehl stated:

> If Plaintiff believes he was not adequately represented by his prior counsel in this case, his remedy is to pursue a separate action against his counsel who was clearly acting as Plaintiff's agent.

*Id.* at 2. On February 4, 2020, Interstate's counsel sent Ismail a check for $16,647.10—his share of the $50,000 settlement less taxes and Kolman's $20,000 legal fee. (Am. Compl. ¶ 35.) The Third Circuit Court of Appeals affirmed Judge Schmehl's rulings on February 16, 2021. (*Id.* ¶ 34); *Ismail I*, 842 F. App'x 821 (3d Cir. 2021).

II

Kolman and Ismail's lawyer William Rush "jointly" move to withdraw the Amended Complaint believing Ismail cannot recover damages above the amount necessary to establish the Court's jurisdiction over the dispute, *see* (Mot. to Withdraw Am. Compl., Dkt. No. 19), so the Court must assure it has jurisdiction, *see Golden ex rel. Golden v. Golden*, 382 F.3d 348, 354 (3d Cir. 2004) (holding that federal courts have a "continuing obligation to investigate their jurisdiction over the matters before them"). Ismail invokes the Court's diversity jurisdiction, which requires complete diversity of citizenship between the parties and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332. Ismail is completely diverse from Kolman and Kolman Law because he is a citizen of New Jersey and they are citizens of Pennsylvania, *see* (Am. Compl. ¶ 49), leaving only the amount in controversy at issue.

For a court to lack subject matter jurisdiction, it must appear to a "legal certainty" that the claims are "really for less" than $75,000. *See Huber v. Taylor*, 532 F.3d 237, 243 (3d Cir. 2008) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303

4

U.S. 283, 288–89 (1938)).  The claims are "not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Angus v. Shiley Inc.,* 989 F.2d 142, 146 (3d Cir. 1993).  That assessment requires "only minimal scrutiny" and turns on the amount the plaintiff could "conceivably recover" under state law.  *Suber v. Chrysler Corp.,* 104 F.3d 578, 583–84 (3d Cir. 1997).  But "[t]he court should not consider . . . the legal sufficiency of those claims or whether the legal theory advanced by the plaintiff is probably unsound." *Id.* at 583.

Though Rush doesn't categorize it as such, *see* (Dec. 17, 2025 Tr. at 3:24–4:8), Ismail's claims sound in legal malpractice because he contends his former lawyer provided poor legal services and fraudulently induced him to settle, *see* (Am. Compl. ¶¶ 37–39, 56–59, 67–72); *Knopick v. Connelly,* 639 F.3d 600, 605 n.7, 610 (3d Cir. 2011) (indicating that legal malpractice can be in tort or breach of contract).  Recovery for such a claim includes "actual losses . . . measured by the judgment the plaintiff lost in the underlying action," *Kituskie v. Corbman*, 714 A.2d 1027, 1030 (Pa. 1998), punitive damages,[1] *see Rizzo v. Haines*, 555 A.2d 58, 65 (Pa. 1989), and legal fees, *see Duncan v. Lord*, 409 F. Supp. 687, 692 (E.D. Pa. 1976); *see also Muhammad v. Strassburger*, 587 A.2d 1346, 1348 (Pa. 1991) (permitting liability arising out of a settlement agreement that a lawyer fraudulently induced the plaintiff to settle).

---

[1]    Punitive damages require conduct that is "malicious, wanton, reckless, willful, or oppressive." *Rizzo*, 555 A.2d at 69 (allowing punitive damages against a lawyer who fraudulently induced the plaintiff to transfer him money).

Ismail seeks $160,000 he says he lost by settling his original case,[2] the $20,000 in legal fees Kolman received under the parties' fee agreement, costs, attorney's fees, and punitive damages. (Am. Compl. at 8, 10); (Dec. 17, 2025 Tr. at 26:15–23.) Ismail's claimed damages are tenuous and speculative, but the Court has jurisdiction because they are conceivably recoverable under Pennsylvania law, *see Suber*, 104 F.3d at 584, and the Court cannot say with legal certainty that Ismail's claims are really for less than $75,000, *see Smith v. Ponziano*, No. 19-3624, 2019 WL 6219214, at *2–*3 (E.D. Pa. Nov. 21, 2019) (finding the amount in controversy satisfied in a legal malpractice case because the amount lost in the underlying action exceeded $75,000); *see also Cash v. Elan*, No. 24-cv-2057, 2024 WL 4591453, at *1 (D.D.C. Oct. 28, 2024) (order) (finding the amount in controversy satisfied in a legal malpractice case because the plaintiff would have received more than $75,000 had she prevailed in the underlying action); 14B *Wright & Miller's Federal Practice & Procedure* § 3702 (5th ed. 2025) ("A plaintiff's allegation that the matter in controversy exceeds the jurisdictional-amount requirement, even when it is in cursory form, has been held to be sufficient by a significant number of federal courts.").

III

Ismail's claims are time-barred. The Third Circuit Court of Appeals allows dismissal of complaints pursuant to Rule 12(b)(6) based on statutes of limitations only if "the time alleged in the statement of a claim shows that the cause of action has not

---

[2] Ismail contends his original lawsuit was worth $210,000. He claims an employee at Kolman Law provided this figure based on his lost wages and benefits, unemployment, and relocation expenses. *See* (Dec. 17, 2025 Tr. at 26:15–23, 28:5–12).

6

been brought within the statute of limitations."[3] *Robinson v. Johnson,* 313 F.3d 128, 135 (3d Cir. 2002) (citation omitted).

Ismail's breach of contract claim has a four-year limitations period, *see* 42 Pa. Stat. & Cons. Stat. Ann. § 5524, and his fraud claim has a two-year period,[4] *see id.* § 5525. Pennsylvania courts favor a strict application of statutes of limitations. *See Perelman v. Adams*, 945 F. Supp. 2d 607, 614 (E.D. Pa. 2013) (citations omitted). Under Pennsylvania law, the time to file suit begins to run as soon as the right to institute and maintain a suit arises. *Id.* (quoting *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005)). Breach of contract claims accrue on the date of the alleged breach, and fraud claims accrue when a party knew or should have reasonably known of the purported injury and its cause. *See id.* (first citing *Parker Soc'y Hill Travel Agency, Inc. v. Presbyterian Univ. of Pa. Med. Ctr.*, 635 A.2d 649, 652 (Pa. Super. Ct. 1993); then citing *Fine*, 870 A.2d at 861).

Ismail alleges Kolman breached his contract by:

- Failing to exercise the degree of knowledge or skill required;

- Inaccurately advising him about the value of his damages and the settlement being enforceable until reduced to writing and executed;

- Acting adversarial during his representation and requesting Judge Perkin enforce a settlement Ismail did not want enforced; and

---

[3] The Court also considers matters from *Ismail I* and the December 17, 2025 hearing because they are "matters of public record." *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted); *Traumann v. Funt*, No. 24-2599, 2025 WL 1742782, at *2 n.3 (3d Cir. June 24, 2025) (considering "matters of public record" when deciding statute of limitations under Rule 12(b)(6)); *Sarsfield v. Snow & Ice Mgmt. Co.*, No. 21-CV-383, 2021 WL 4643794, at*2–*5 (W.D. Pa. Oct. 7, 2021) (same).

[4] Pennsylvania also has a two-year statute of limitations for legal malpractice. *See Knopick*, 639 F.3d at 606.

- Refusing to file objections to Judge Perkin's Report and Recommendations.

(Am. Compl. ¶¶ 56–59.) None of those events occurred within four years of Ismail's Complaint in this case. Kolman purportedly inaccurately advised Ismail about the settlement agreement in the days leading up to the April 3, 2019 settlement conference, *see* (*Id.* ¶¶ 36–38), sought to enforce the settlement on June 3, 2019, *see* (*Id.* ¶¶ 25–26), and withdrew as Ismail's lawyer and refused to object to the settlement between June 19 and July 3, 2019, *see* (*Id.* ¶ 29). Ismail filed this lawsuit on October 22, 2024. (Dkt. No. 1.)

Ismail also alleges Kolman committed fraud by inducing him to settle and misrepresenting his share of the settlement. (*Id.* ¶¶ 68–72.) Ismail claims he first learned that Kolman withheld $20,000 in legal fees on March 18, 2024, *see* (*Id.* ¶ 48), but that's not so. Well before the two-year limitations period Ismail repeatedly acknowledged—and Kolman, Judge Perkin and Judge Schmehl repeatedly told Ismail— how the fee arrangement worked. Ismail executed a fee agreement with Kolman on May 29, 2018, (*Id.* ¶ 14), which provided that "[a]ny recovery or settlement . . . will be distributed sixty percent (60%) to you and forty percent (40%) to the Firm," *Ismail I*, 2019 WL 7041895, at *2; *see also* (Am. Compl. ¶ 14 ("Fee Agreement attached hereto as 'Exhibit A.'")). The agreement offered examples of how any potential settlement would be apportioned between Ismail and Kolman. *See Ismail I*, 2019 WL 7041895, at *2. Judge Perkin explained during the April 3, 2019 settlement conference that the $50,000 settlement "includes all costs and counsel fees," which Ismail recognized and accepted. *See id.*, Apr. 3, 2019 Tr. at 6:17–7:6. Kolman's fees under the parties' contingency fee agreement were 40 percent, which in a settlement for $50,000 meant a $20,000 fee. *See*

8

*id.*, 2019 WL 7041895, at *2–*3.  Ismail admitted further that Kolman was entitled to $20,000 under the settlement agreement.  (Dec. 17, 2025 Tr. at 30:11–13.)

Between the April 3 and June 3 hearings, Ismail became dissatisfied with the settlement and accused Kolman of not explaining how the fee arrangement worked. *See* (Am. Compl. ¶¶ 19–25, 23, 36–37).  The night of April 3, Ismail reiterated his knowledge of the fee arrangement: "The legal fees being 40% is a huge difference.  Had I known this, I would have wanted to continue to go to court because I would make 40% more."  *Id.*; *see also* (Am. Compl. ¶¶ 23, 36–37 (similar)).  Counsel for the parties corroborated Ismail's concerns about the fee arrangement on May 21.  *See Ismail I*, May 21, 2019 Letter, Dkt. No. 30.  Ismail then objected to the settlement at the June 3 hearing, (Am. Compl. ¶ 26), while confirming again to Judge Perkin that he knew Kolman would receive 40 percent of the $50,000.  *See id.*  Judge Perkin issued his Report and Recommendation on June 19 and noted Ismail's concerns with the fee arrangement.  (*Id.* ¶ 27); *see generally Ismail I*, 2019 WL 7041895.  Ismail invoked those concerns once more in his objection to the Report and Recommendation where he several times acknowledged Kolman's share of the settlement amount.  *See id.*, Notice of Obj. at 1–3, Dkt. No. 40.  And on February 4, 2020, Ismail received a settlement check for $16,647.10, (Am. Compl. ¶ 35), representing the total settlement amount, Kolman's $20,000 fees, and $13,352.90 in taxes.[5]

Ismail cannot rely on the discovery rule, which tolls the statute of limitations where a plaintiff could not reasonably have discovered his injury or its cause.  *Knopick*, 639 F.3d at 607 (citing *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 572 (Pa. Super.

---

[5]     Even if Ismail didn't know about how his settlement was apportioned on February 4, 2020, he reasonably should have known in the many months that followed.

Ct. 2007)); *Mest v. Cabot Corp.*, 449 F.3d 509, 510 (3d Cir. 2006) (holding the discovery rule applies "when a plaintiff is unable, despite the exercise of due diligence, to know of the injury or its cause" (citation omitted)).  Rush argues that Ismail first discovered that Interstate directly paid Kolman $20,000 in legal fees sometime in 2023 after an unidentified hearing, *see* (Dec. 17, 2025 Tr. at 48:11–49:11), but Ismail had no reason to believe that.

Ismail claims he "was unable to act on any litigation against Mr. Kolman" until his "damages went into effect" when the Third Circuit affirmed Judge Schmehl's rulings on February 16, 2021.  *See* (Ismail's Mot. to Reject Rush's Withdrawal at 3, Dkt. No. 25).  Not so.  In addition to all of the above, Judge Schmehl enforced the settlement agreement over Ismail's objections on December 20, 2019, *see Ismail I*, 2019 WL 7020114, and amended his Order on January 6, 2020, *id.*, 2020 WL 60044.  In his January 27 Order denying Ismail's request to proceed with the case, Judge Schmehl told Ismail that his remedy at that point was to sue his lawyer.  *Id.*, Jan. 27, 2020 Order, Dkt. No. 52.  So, at the very latest, Ismail knew his only remedy was to sue Kolman on January 27, 2020.

IV

A party may amend a pleading with "the court's leave," Fed. R. Civ. P. 15(a)(2), but courts may deny leave when the proposed "amendment would be futile," *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 210 (3d Cir. 2019) (citation omitted).  Ismail does not seek leave to amend, and even if he did, amendment would be futile because he cannot overcome the statutes of limitations that bar his claims.  *See U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 516 (3d Cir. 2007)

("Repleading is futile when the dismissal was . . . based on some legal barrier other than want of specificity or particularity.").

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.